cases before the court this morning. The first is Bobel v. ITC, case number 141701. Mr. Kundu, is that how you pronounce that? Yes, Your Honor. You want to take a full seven minutes for rebuttal? Yes, if I may. Okay, then you better watch your time, but we'll allow that. All right, are you... Yes. You may proceed. May it please the court. Your Honors, my name is Sudeep Kundu, and I represent the appellant, Andre Bobel, and his lighting company, Neptune Light. Your Honors, one of the main issues in this case concerns the proper construction of the claim term mating opening. The specification uses the term mating opening ten times, and, for example, one of those times is with respect to figure one, which identifies the mating opening as element 120, and that's on column four, line 49. In each of the ten times that mating opening is used, the patent does not divorce mating from opening. But in construing mating opening, the commission divorced the two words, finding that mating was not in dispute, and that opening did not require construction. The evidence in the record in this investigation showed that the word mating could not be divorced from opening. So, like as I said, the specification consistently uses the term mating opening. The extrinsic evidence also showed at the hearing and in the record that a person of ordinary skill in the art, reading the intrinsic evidence, would not divorce the two terms either. Well, I'm not sure I understand why that matters. Whether it's a mating opening or an opening, the commission simply said that, by definition, you have to have an opening for something to fit into. Your Honor, there's two things there in terms of what the opening means. So, the reason why we're arguing that the terms can't be divorced from each other is because that's... Well, even if they can't be divorced from each other, opening is a pretty common term. I mean, unless you have something in the specification that says opening doesn't actually mean an opening, but a closed surface, then how would we ever get to your definition? I mean, mating obviously modifies opening, but it still has to be an opening of some sort, doesn't it? Yes, Your Honor. And so, what our position is in terms of, if you look at Figure 1, Figure 1 is a fluorescent reflector lamp. That's also the preamble of Claim 1. So, in that, that's an assembled product. So, there's a mating opening that's been identified. It's 120, defined by that Flange 105. There's no hole there. And the position, our position is that the opening is not limited to a hole. Well, there's no hole when it's all put together. But as it's being put together, there's a hole that the base goes into, right? That's correct, Your Honor, in terms of the method of manufacturing the product. But the claim is not a method of manufacturing. It's the product. It's the fluorescent reflector lamp, which is what Figure 1 is. Right. I mean, I don't read the Commission to have said that the opening has to exist after the product's all put together. So, if, I mean, our position, Your Honor, is, if that's true, I mean, we took their brief to mean that the mating opening doesn't have to be a hole, which was our position. And it's, and that's, the IPC's brief has that, page 26, footnote 12, that they declined to construe the opening as a hole. So, when the patent, for example, uses the term hole, it doesn't use it to refer to mating opening. It uses it to refer to elements 111A and 111B, which are the holes in which the light source is inserted into. So, what we have, in terms of the claim, is the assembled product. It's not the way it's manufactured. And so, what we have in Figure 1 also is the assembled product. So, Figure 1's identified as a fluorescent reflector lamp, which is the same preamble of Claim 1. All right. Well, even if we were to agree with you, and I'm not quite sure I'm following your argument exactly, but you've got about five grounds upon which the IPC relied to find non-infringement. Yes, Your Honor. You know, this isn't just one issue here. You've got a lot of non-infringement findings by the Commission. Yes, Your Honor, we do. And our position there is that the Commission's findings of non-infringement are not based on evidence. So, in this context, in the 540 patent, the level of ordinary skill was not that of a layperson. It's a mechanical engineer with an education in mechanical design and manufacturing. So, both sides had expert witnesses. We had one, Dr. Mayer. The respondents had two. And so, based on this Court's precedent in Centrica, as well as in Spansion, if the skill level of the technology is beyond a layperson, and one side has expert testimony of infringement, which we did, which the ALJ was persuaded by in finding infringement, then to rebut that evidence, there's got to be expert testimony on the other side. But what we have here in the record is that— we're saying that the bowl-shaped reflectors have no opening. Is that not correct? That was under the respondent's claim construction, Your Honor, which required the mating opening to be a hole. It was not under the construction adopted by the ALJ. And I would also say that when the Commission discussed— We agree. So, let's say we agree with the Commission's construction of the term mating opening. Then the accused products don't infringe. They don't include the claimed opening. Your Honor, we would respectfully disagree with that. If mating is not in dispute, and we're just talking about opening, which is not limited to a hole, well, then there's an area in each of the accused products where there's a portion of the light source base that has a light source that is inserted in it. So, the mating opening, according to Claim 1, is defined by the first circumferential flange. We identified that with our evidence in each of the accused products. It's an axially projecting circular projection. That, according to Claim 1, defines mating opening. So, looking at Claim 1, how do you know there's a mating opening? I think it's defined by a first circumferential flange. And so, when the Commission came up with its construction for the first time in the final determination, saying that mating is not in dispute, and that opening didn't have to be limited to a hole, well, the evidence that we presented showed, yes, there was a first circumferential flange defining a mating opening inside of which there's a light source that attaches to the light source base. But the problem is, and the ITC found, that you essentially want to collapse everything into one piece. In other words, your claim actually has a variety of things. It doesn't just have the opening, but it has a first circumferential flange and a second flange, and yet you want to say they all are the same thing covers all of those limitations. Your Honor, we would respectfully disagree with that. In terms of the first and second circumferential flange, the evidence at the hearing determined that, to a person of ordinary skill, a flange could be a circular projection. And when you say the evidence, you're saying we're supposed to ignore the patent itself and say that your expert is the only thing we can look at? No, Your Honor. That's consistent with the intrinsic record as well. And the idea that a flange is a circular projection is not an issue on appeal, and it wasn't challenged below. But you specifically defined those other parts, and now you're saying that mating opening is just those other parts. If that's the case, then why do you need to have a claim element that's mating opening at all? Well, Your Honor, in our construction, there's two parts of it. The claim defines the mating opening using the first circumferential flange. There's a second part to it, which is, okay, well, what's happening inside there? What's happening inside that mating opening? Well, it's where the light source base attaches to the light source. So it's not that... Isn't it the opening through which the light source base attaches to the light source? It's where that is happening. So the holes... Which is an opening. It has to be an opening. Well, I think I've lost track. What I was saying, Your Honor, is that the first circumferential flange defines the mating opening, but it's more than that because that's where... How can the first circumferential flange define the mating opening? The first circumferential flange is a separate claim element, and the mating opening is a separate claim element. You're trying to get us to equate the two. If you had meant that, you wouldn't have had to use two different terms. You're using the first circumferential flange as the structure outside. The mating opening has to be something else, which is the opening through which it goes. Your Honor, if I could respond to that. The claim term, the entire claim term, is a first circumferential flange defining a mating opening, having an inner diameter. So when I say that the mating opening is defined by that first circumferential flange, that's what I mean, that it's in the claim language. You're well into your rebuttal time. I'm sorry, Your Honor. Okay, you'll have five minutes on rebuttal. So you're going to take the first argument for eight minutes, is that right? That's correct, Your Honor. Okay. Good morning, and may it please the Court. The Commission has four separate grounds for finding non-infringement, any one of which is dispositive for a finding of no violation of Section 337. First, under the Commission's construction of opening, the accused products do not have an opening in their reflectors as required by the claims. The Commission also has three grounds of non-infringement that are independent of claim construction. No matter how opening is construed, the accused products lack a light source base, a first circumferential flange, and a second circumferential flange. Let me look at the opening issue first. What bothers me is that, you know, if you look at all the figures and you look at the written description, I can see where the Commission thought they were getting this definition. The problem is, if you look at the claims, the claim simply says it talks about a reflector with a defined cavity. Said cavity having a first circumferential flange, defining a mating opening, having an inner diameter. So why couldn't the flange be the outside and the opening be from the inner diameter and that constitute the opening? I mean, you could fit something into that flange, correct? Well, the claim language says that the cavity has to have a flange. That implies that the flange has some relationship to the cavity. Okay, that's your second or third ground, right? That's not your first ground. I'm sorry. That's not your first ground. The first ground, I thought we were talking about the mating opening. If the flange defines the opening and all you need is an inner diameter to define the opening, why couldn't the accused device be said to have that opening? Well, opening needs to be given meaning and based on the plain and ordinary meaning of opening, the opening has to be an actual opening. Nothing in Neptune, what they're saying, they've not identified an actual opening. So just because there's a flange around some sort of area, that doesn't mean there's also an opening. They also have to show that there is an opening. And then on claim construction, the commission correctly gave opening its plain and ordinary meaning. The commission, applying Phillips, found that the claims and specification were consistent with this plain meaning of opening and there was no reason to diverge from that plain meaning. The patentee did not act as a lexicographer. There's no disavowal of claims go. I'm still having a hard time. So if you've got this, right, and you fit something in it, can't that be your opening, right? Or are you saying there has to be a complete open-ended piece on the other side? The whole point of the patent is simply to have something to fit into, right? Well, the point of that, the mating opening, and then later in the patent it discusses mating, which is talking about the white source base connecting to the ballast housing. The ballast housing is on the rear of the thing. So if there is no opening that allows that mating to occur, then the claim language isn't satisfied. So based on the claim language itself, as well in light of the specification showing similar openings where it extends all the way through, to have the claimed mating opening, it would have to extend through the entire product and permit that mating. And the commission correctly here rejected Neptune's argument that the mating opening means the area in which a portion of the white source base, i.e., the portion through which the white source is inserted, is located. That construction is self-serving, circular, and unsupported by anything in the record. Now moving on to non-infringement, the commission found that the accused products did not infringe on four separate grounds. Two of these grounds are the first and second circumferential flanges. Now the claims here require two flanges. But as can be seen in the commission's brief on pages 50 and 52, Neptune identifies what is, at best, a single flange in the accused product. But even if a single flange were two flanges, Neptune also failed to show that the flanges satisfied the remainder of the claim language. The first circumferential flange has to be of the reflector cavity, and the second circumferential flange has to be of the light source base. There's no evidence that a flange located outside of the reflector is of the reflector cavity or of the light source base. So what you're saying is that there has to be two separate flanges. Yes, Your Honor. So one has to be inside the other. So the first circumferential flange must be inside the cavity. Yes, the first one must be inside the cavity. Now another non-infringement ground is that the accused product lacks a light source base being inside said defined cavity of the reflector. Neptune alleges that a portion of the reflector walls constitutes the light source base. But while the reflector walls define the light source cavity or define the reflector cavity, the reflector walls are not themselves located inside the reflector cavity. Therefore, Neptune's allegations and the record evidence show that there is substantial evidence that supports the commission's findings that the accused product lacks a light source base. Now finally, under the commission's construction of opening, the accused product do not have an opening or a light source base located inside of that opening as required by the claims. Now, I'm looking at Dr. Roberts' testimony in the record and he seems to say that the accused products had continuous ball-shaped reflectors without openings. Am I correct on that? I believe you are correct. Yes, you are correct. Is there any refutation of that? There's no refutation that there is not a literal opening as one would ordinarily understand the term in the accused products. Well, there are some openings. They're just not defined by the circumferential flange. Yes, there are two holes. Those openings do not fit the claim language like you had mentioned because they're not defined by a circumferential flange. Right, but those holes would be openings if you were just looking at openings. Correct. And those holes serve a mating function. Well, those holes do serve some form of attachment. The patent itself does refer to a different form of mating. But the circumferential flange here does make a difference. And so, in summary, Neptune's patent requires specific structural features that the accused products simply do not have. Neptune's only response is to argue that its unsupported expert testimony should be elevated to a level of importance found nowhere in this court's jurisprudence. So accordingly, this court should affirm the commission's determination Thank you. Mr. Riggs? Seven minutes? Yes, Your Honor. May it please the court. Decisions of this court have advised practitioners for years that claims are not construed in the abstract. They are construed as part of the specification and the written description that goes with it. And if you do that, in this case, like the commission did, you come to the conclusion that a hole has to be a passage or an opening that something passes through. Because when you look at what the inventor described as his invention, it was a very specific invention. It was a reflector that has an opening on the top and an opening on the bottom. It has a circumferential flange that defines that opening on the bottom. It has a light source base. That light source base has a circumferential flange that's larger than the other circumferential flange. You're primarily focusing on the figures, which, as we all know, are not the primary focus for any analysis of the written description. And there is that fine line between looking at the written description and importing limitations from the written description into the claim. The claim is much broader. I mean, the claim doesn't say opening at the top and opening at the bottom. Does it? Yes, it does. The claim says light-emitting opening at the top. It has a circumferential rim defining a light-emitting opening and a circumferential flange defining a mating opening. It says that the light-emitting rim is at the top. That's right. Right? So what we're focusing on is the bottom. Right. And all it says as to the bottom is, said cavity having a first circumferential flange defining a mating opening, having an inner diameter. Correct. Okay. So how does that say you have to have an opening at the top and an opening at the bottom? The claim says that the—it doesn't say top and bottom. It says the light-emitting opening is at the wider part of the reflector and the circumferential rim is at the wider portion of the reflector and the circumferential flange is at the narrower portion. It doesn't go all the way to the bottom. I admit it doesn't say exactly top and exactly bottom. But when you read the claims and you read the specification and you see what is described in the figures and what's described in the written description itself, you see that you have a reflector that has an opening on—two separate openings. And the reason it has two separate openings is because you insert the light source base into that circumferential flange that defines the mating opening. What else the claims tell you is that that light source base has its own circumferential flange, which is larger than the circumferential flange defining the inner diameter. Why? It traps the light source base so it can't go all the way through. The light source base then attaches to the ballast housing and you have your complete device all connected together. That's what the inventor invented. And you read the claims in light of that. You don't carry the limitations. I'm not suggesting you carry the limitations, but I'm suggesting you have to look at the context when you're looking at the claims. Given that, I think the commission's claim construction about an opening being its plain and ordinary meaning, an open space that allows a passage, that's consistent with what you see in the specification. It's consistent with what he described as his invention. Not a solid surface that— Yeah, so here's my problem. It's actually not a solid surface. It has a couple openings in which the tubes come through. So, in other words, the electrical connection occurs in that area. So, I still don't understand why the claims, as separate from the diagrams, would require a full opening on both sides. Now, you might have an argument that because it has to be defined by the circumferential flange, that that whole piece has to have the ability to be open to an electrical connection. But that's not—the claim construction of the word opening seems to have gone too far. I'm not saying there might not be other non-infringement grounds, but I'm having a hard time understanding. They really just looked at the diagram and said, that's what we're focusing on. I don't think so, because if you look at the claim language, a circumferential flange defining a mating opening having an inner diameter. In order to have an inner diameter of a body, it has to be an opening. Otherwise, there's no inner diameter. Part of that claim language, telling you that there's an inner diameter, tells you it's an opening. You can't have an open space that has an inner diameter. If there's no inner diameter, it's a solid. I wanted to touch on a couple of the points that were raised by the appellant. They make some arguments about there not being support for the non-infringement position. The commission did cite to and rely upon the testimony of Dr. Roberts. Dr. Roberts was admitted as an expert in the lighting industry, the design of CFL lamps, as an electrical engineer, and as the mechanical design of CFL lamps. He was admitted over the objection of counsel by the ALJ, who thought that his experience was sufficient to give appropriate testimony. He did testify that there was no infringement. He described how there was no mating opening, how there was no second circumferential flange, how there was no light source base. All that testimony was part of the record. There was full support for the commission's position. What do we do about the fact that the ALJ made different factual findings and different credibility determinations as it relates to the expert testimony than did the commission? I'm not sure. My understanding, the law as I understand it, is that you are reviewing the commission's opinion, not the ALJ's opinion, and that the ALJ's opinion is part of the record. But I'm not sure what factual findings that you are referring to. Well, he found infringement. He did, based on the claim construction that the commission then reversed or altered, I should say. Well, that wasn't the only thing. I mean, he also, you said the commission had five grounds of non-infringement or four grounds of non-infringement. He obviously didn't buy any of those grounds. Right. I don't think his opinion, we don't, I'm pretty, the law says that you don't reevaluate or compare the ALJ's opinion to the commission's opinion. The question before this court, is there substantial support for the commission's decision? And the commission can make its own factual findings. It is the ultimate determiner of the facts from the ITC. Okay.  Thank you. Thank you, Your Honor. All right, you'll have five minutes left now. Your Honor, just very briefly, I just want to note in the commission's final determination in the appendix at 24, the commission stated the specification refers to the mating opening and holes as separate structures. And then also in the ITC's brief at page 26, footnote 12, the commission stated that it, quote, declined to construe the opening as a hole. And now that's just in rebuttal to what the ITC and the interveners have argued, which they're trying, it seems, to construe opening to be a hole. But the record, even the briefs, show that the positions are relatively consistent that opening is not limited to a hole. All right, what about the issue of the reflector cavity having the circumferential flange inside of it? You pretty much merged those two. How do you get around that? Your Honor, the first circumferential flange being inside the cavity is not a claim element. It's not in the claims. That's something that we've briefed. It's an additional element that's been injected into them. But the claim one does not say that, excuse me, the first circumferential flange is inside of the cavity. So you're saying that where it says, said cavity having a first circumferential flange, defining a mating opening, and said cavity having an interior wall defining a reflective surface of the reflector, having a substantially larger diameter at the circumferential rim than the circumferential flange, you're saying that that reflective interior wall and the circumferential flange can be one and the same? Yes, Your Honor. And as part of that, in the embodiments, you'll have a radially projecting circumferential flange, and then the accused product is axially projecting. And the evidence that person of ordinary skill in the art reading the intrinsic evidence would not distinguish between axially projecting or radially projecting circumferential flange. And, Your Honor, if I may, I also want to reiterate with the quotes that I read from the ITC's brief and the final determination is that, again, claim one, excuse me, like figure one, is an apparatus claim to a fluorescent reflector lamp. It's not a method of manufacturing, which is why you'll see that on both sides, the mating opening is not limited to a hole. Because in the assembled product, there is no hole as the mating opening. The last point, Your Honor, if I may, is that Dr. Roberts, just want to be clear, he testified in terms of claim construction under a different level of ordinary skill in the art. There was one offered by appellants that was adopted by the ALJ. That was not the level of ordinary skill that Dr. Roberts was testifying under in terms of his claim construction position. In terms of non-infringement, Dr. Roberts testified that under the constructions adopted by the ALJ, only one of which was reversed by the commission, that he had no non-infringement opinion. So that's what we mean when we say that those four or five rounds of rejection, they're not supported by the evidence. Because Dr. Roberts himself said, I don't have any non-infringement opinion under these constructions. But as long as there was one that the commission adopted, then you've got a problem because you have to meet every limitation, correct? That's correct, Your Honor. So what I'm saying is, the only construction that was altered by the commission was mating opening. So if that's reversed, we're saying that there's no substantial evidence supporting the non-infringement finding. Okay. Thank you, Your Honor. Thank you. All right, the case will be submitted.